[No. 14468. Department.One. April 26, 1918.]

THE STATE OF WASHINGTON, *Respondent,* v. GREAT NORTHERN RAILWAY COMPANY *et al., Appellants,* J. W. REELY, *Defendant.*[1]

INTOXICATING LIQUORS—SEIZURES—SHIPMENTS—PERMITS— EXPIRATION. A shipment of intoxicating liquor to a druggist, which did not reach this state until after the expiration of the thirty days limited in the permit, is contraband, and subject to seizure and forfeiture, under Rem. Code, § 6262-17, requiring a county auditor's permit for such shipments and providing that the permit shall be void after thirty days from the date of issue.

SAME—SEIZURES—EXPIRED PERMITS—DUTY OF CARRIERS. The fact that the shipment was initiated prior to the expiration of the thirty days limited in the permit would not make it the duty of the railroad company to transport it to its destination after it had become contraband by lapse of time.

Appeal from a judgment of the superior court for Spokane county, McCroskey, J., entered June 21, 1917,

[1]Reported in 172 Pac. 546.

upon stipulated facts, confiscating contraband intoxicating liquor.    Affirmed.

*Tolman, King & Way,* for appellant Bloch.

*Charles S. Albert* and *Thomas Balmer,* for appellants Great Northern Railway Company *et al.*

*John B. White* and *F. B. Danskin,* for respondent.

WEBSTER, J.—This proceeding was begun by the filing of a complaint with a justice of the peace for Spokane precinct, Spokane county, Washington, and the issuance of a search warrant thereon pursuant to the provisions of ch. 2, Laws of 1915, p. 2, commonly known as the state-wide prohibition law (Rem. Code, § 6262-1 *et seq.*).    Under the authority of the search warrant the sheriff seized a quantity of whiskey at the Northern Pacific freight depot in the city of Spokane. Before the return day fixed in the warrant, claims to the liquor were filed by B. K. Bloch, as owner, and the Great Northern Railway Company and the Northern Pacific Railway Company as carriers.    A trial in the justice court upon stipulated facts resulted in judgment declaring the liquor forfeited and ordering its destruction.    The cause was appealed to the superior court and there tried upon the same stipulated facts, resulting in a judgment that the liquor be forfeited and destroyed forthwith by the sheriff, from which judgment the claimants have appealed.    No testimony was introduced upon the trial below, the parties having stipulated in writing that the cause be submitted to the court for decision and judgment upon the following agreed facts:

"That, on the 15th day of March, 1917, on complaint of Clarence Long, for a search warrant, a search warrant directed to the sheriff was issued out of the justice court of the state of Washington in and for Spokane precinct and county, by S. C. Hyde, justice

of the peace, and was executed by the sheriff of Spokane county, who made search of the freight depot of the Northern Pacific Railway Company and seized four crates of intoxicating liquors, which contained approximately 575 quarts of whiskey; that, on November 26th and 28th, 1916, the county auditor of Snohomish county, state of Washington, issued to the Optimus Pharmacy, at the town of Index, state of Washington, four permits authorizing the shipment of four crates of whiskey from the city of Maysville, Kentucky, to said Optimus Pharmacy at the town of Index; that the said Optimus Pharmacy were, and are, registered druggists and pharmacists, actually in business as such at Index, in the state of Washington; that the liquor described in the sheriff's return was shipped on the order of the claimant, B. K. Bloch, by the H. E. Pogue Distillery Company, from Maysville, Kentucky, in four separate crates to said Optimus Pharmacy; that there was attached to each of said crates one of said permits issued as aforesaid by the county auditor of Snohomish county; that, at the time of said shipment, said permits were unexpired and in full force, and that, at the time said four crates of whiskey, so shipped from Maysville, were transported into the state of Washington by the Great Northern Railway Company, more than thirty days had expired from the date of the issuance of said permits; that said liquor reached Index over the line of the claimant, Great Northern Railway Company, but was not delivered to the Optimus Pharmacy; that the agent of the Great Northern Railway Company notified said H. E. Pogue Distillery Company and B. K. Bloch of such non-delivery, and said Bloch requested said Great Northern Railway Company to consign and ship said liquor from Index, Washington, to J. W. Reely at Missoula, Montana; the intention of Bloch being to have said liquor placed in the storage warehouse of said Reely at said point, to be there held subject to his order; that, on the 22d day of February, 1917, the Great Northern Railway Company issued a bill of lading for said liquor to B. K. Bloch, as consignor, in which it was agreed with the shipper to carry said whiskey to its

usual place of delivery at destination, if on its road, otherwise to deliver to another carrier on the route to said destination, and in which bill of lading it was provided, among other things, that said shipment was 'consigned to J. W. Reely, destination Missoula, state of Montana, route N. P. delivery,' and the original bill of lading so issued was mailed to the consignor, B. K. Bloch. Thereafter the said intoxicating liquor was transported via the Great Northern Railway company's line from Index to Spokane, in the state of Washington; that the Great Northern Railway lines did not extend to Missoula, and at Spokane it was necessary to transfer said intoxicating liquor from the Great Northern Railway Company to the Northern Pacific Railway Company in order for said shipment of four crates of whiskey to be transported to its destination at the city of Missoula; that, on the 22d day of February, 1917, at the time said four crates of whiskey were shipped from Index, consigned as aforesaid, with its destination Missoula, no permits whatsoever were obtained from the county auditor of Snohomish county, state of Washington, authorizing the shipment of said four crates of whiskey from Index to Spokane, the state line, or any other point within the state of Washington, or to Missoula, Montana; that said four crates of whiskey had no permits attached thereto authorizing a common carrier to carry and transport said four crates of whiskey to Spokane, the state line, or any other point within the state of Washington, or to Missoula; that each of said crates of whiskey was labeled on the outside cover so as to plainly show the name of the consignee, and each of said crates had attached thereto one of the printed permits, hereinbefore referred to, issued by the county auditor of Snohomish county on November 26th and 28th, 1916.''

Many other facts appear in the stipulation which, for the purpose of this opinion, it will not be necessary to notice.

A number of interesting questions are raised and discussed in the briefs; but since we have reached the

conclusion that the liquor was contraband and subject to confiscation as such from the time it entered the state of Washington, only such matters as are essential to that feature of the case will be considered.

Section 17, ch. 2, Laws of 1915, p. 17 (Id., § 6262-17), provides that any registered druggist or pharmacist actually engaged in business within the state, desiring to transport or ship any intoxicating liquor within the state, shall first secure from the county auditor a permit therefor, which permit can only be used for one shipment "and shall be void after thirty days from the date of issue." Section 18 (Id., § 6262-18) makes it unlawful for any transportation company to knowingly transport or convey any intoxicating liquor within this state without having a permit issued by the county auditor for the transportation of such liquor affixed in a conspicuous place to the parcel or package containing the liquor. Provision is made for search and seizure of the liquor, and for judgment of forfeiture and destruction in the event it shall be determined that the liquor is being kept or possessed in violation of the provisions of the act.

Since it is admitted that, when the shipment reached the state of Washington, more than thirty days had elapsed from the date the permits were issued, it necessarily follows that the shipment was transported within the state to Index and from thence to the place of its seizure under a void permit, which, in legal effect, was no permit at all. Such being the case, the liquor was contraband — subject to seizure, forfeiture and destruction at any place within the limits of the state of Washington.

It is insisted by appellants that, inasmuch as the permits had not expired when the shipment initiated, it was the carrier's duty to transport the shipment to its destination, even though the permits expired while

the goods were in transit and before they entered this state. In support of such contention, numerous cases are cited involving limited passenger tickets, wherein the courts have held that the clause making tickets void after a certain date must be construed as fixing the latest time for commencing, rather than for completing, the journey. The principle upon which those authorities rest has no application to the case in hand. The duty of a carrier with respect to its passengers who become such by virtue of tickets, limited or otherwise, is one that arises out of contract, express or implied, and it may well be that the carrier, who has received the consideration and accepted the passenger, may not relieve itself of the duty of transporting him to his ultimate destination, even though the time limit fixed by the ticket expires before the end of the journey is reached. No such duty devolves upon a carrier to transport intoxicating liquor where the right to such transportation depends upon the existence of a lawful permit issued pursuant to legislative authority. Manifestly is this so where the legislature, in the exercise of the police power, has made it unlawful for the carrier to transport the shipment without a valid permit. The right here given does not arise out of contract, express or implied. It is merely a privilege granted by the statute to the shipper and to the carrier, conditioned upon its being exercised in accordance with the legislative intent. It is incumbent, therefore, upon those who would avail themselves of the privilege, to bring themselves within the terms and conditions which the legislature has seen fit to impose, one of which is that the shipment may not be made within the state without a lawful permit; the other, that the permit shall be void after thirty days from the date of its issue.

The language of the statute is plain—too plain to admit of construction or interpretation. It simply means that the life of the permit is thirty days, and that, when the time limit has expired, its function ceases. It requires no argument to demonstrate that, under the provisions of this statute, it is unlawful for a carrier to transport intoxicating liquor into or within this state without the permit prescribed by the statute. Neither does it require a reference to any authority other than common sense to support the statement that a void permit is no permit at all.

The evident purpose of the statute requiring that the permit shall be affixed in a conspicuous place to the parcel or package containing the intoxicating liquor was to enable the officers charged with the duty of enforcing the law to ascertain by reference to the permit whether the liquor was being lawfully transported. To hold that the date of the shipment, and not the date of its apprehension by the officer, shall determine whether the goods were being transported within the period of time fixed by the permit would be to shift upon the officer a burden that would effectively prevent in most cases a seasonable enforcement of the law. For example, shipments with expired permits attached are interrupted in transit, some which, in fact, may have been initiated during the life of the permit, others after the permit had expired. The consignments may have moved from different points over diverse routes to a connecting carrier within the state where the goods were apprehended. The facts concerning the date of the shipment, the length of time in transit and the lines over which it had been routed, all rest with the shipper and the carrier. The officer has no means of acquiring them, but, under the principle contended for by appellants, must make the seizure at his peril, notwithstanding the self-evident fact that the goods were in transit

by virtue of a permit that *prima facie* afforded the carrier no lawful authority for their transportation. Under such circumstances, it is just as unreasonable to assume that the officer could effectually enforce the law, as it would be unjust to censure his dereliction of duty. Clearly, it was the purpose of the legislature in making the permit void when the allotted time had elapsed, to facilitate, rather than to hinder and delay, the enforcement of the law.

Being of the opinion that the permit was void when the shipment was brought into the state of Washington, and that its movement thereafter while within the state was without authority of law, the goods were therefore necessarily contraband and subject to seizure, forfeiture and destruction as such, according to the method prescribed by the statute. The judgment is affirmed.

ELLIS, C. J., MAIN, PARKER, and FULLERTON, JJ., concur.